# B. F. CARVER & Co.
### *v.*
# DAVID Dows & Co.

1. PARTNERSHIP—*how far the firm is liable for the acts of the individual members.* Where a member of a banking firm has been in the habit of buying exchange from a certain person, on the credit and for the benefit of the firm, which transactions they have always recognized, and such partner finally makes a purchase in the same way from the same person, but converts the proceeds to his individual use, instead of applying them to the use of the firm, the firm will be liable to the party selling the exchange.

2. In such a case, the firm having held out their partner as authorized to do precisely what he did do, if loss followed, it should fall upon them.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was an action of assumpsit brought in the court below by B. F. Carver & Co., for the use of Coddington Billings, against David Dows & Co.

A trial resulted in a verdict and judgment for the defendants. The cause is brought to this court by the plaintiffs by appeal.

The opinion of the court contains a sufficient statement of the case.

Mr. J. V. LE MOYNE, for the appellants.

Messrs. WALKER & DEXTER, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

It appears from this record that one Fairbank kept a bank account with the banking house of B. F. Carver & Co., in Chicago, under the name of "N. K. Fairbank, agent for David Dows & Co." The firm of Carver & Co. consisted of three members, Carver, Billings and Babcock. Dows & Co. were a New York house, and Fairbank did business as a commission

merchant in Chicago.   In June, 1861, Carver went to the office of Fairbank, and told him he had drawn a draft for $2,850 on Dows & Co., which they had telegraphed they could not pay, and he asked Fairbank to telegraph them to pay it as they (B. F. Carver & Co.) wanted the exchange that day, and he must have it paid.   Fairbank said he would telegraph, if they would credit the amount on his bank-book, which Carver promised should be done.   Fairbank accordingly telegraphed, the draft was paid, and the amount credited by him to Dows & Co., in his account with them.   He afterward drew a check or checks on Carver & Co. to that amount, which were paid.   But it seems that the New York exchange was appropriated by Carver for his individual use, Fairbank receiving no credit for it on the books of Carver & Co., and as he afterward overdrew his account, as shown by their books, to the amount of this exchange, they claim that the balance should be paid by Dows & Co., and to recover it, have brought this suit.

It is insisted that the court erred in instructing the jury that they must find for the plaintiffs unless they believed from the evidence that Fairbank had authority from the defendants to open and keep the bank account, thus making the entire case turn upon such authority, and ignoring the question whether the money drawn from the plaintiffs went to the defendant, and should be accounted for by him.   But even if these instructions were erroneous, we consider the case so clear for the defendants on another ground, that even if a verdict for the plaintiffs had been found, it should have been set aside.

The teller in the plaintiffs' banking house, who was called by them as a witness, testifies that Carver was the "head managing man" of the firm, that he bought exchange outside, that they had a good deal of exchange from Fairbank in the form of drafts on Dows & Co.   Fairbank swears that his business with the firm was all transacted with Carver, to whom he frequently sold exchange at his own office, for which he would receive credit on his bank account with the firm.   This evidence is clear and uncontradicted.   From it, it appears

that the firm of Carver & Co. were in the frequent habit of buying exchange of Fairbank in precisely the same manner in which the $2,850 was bought from which this suit has arisen. Exchange was the article they dealt in, and they held Carver, their senior partner, out to the world as authorized to buy on their credit. Especially they did so in regard to Fairbank, from whom exchange had been often bought by Carver on their credit, and paid for by them. The exchange in question was sold on their credit. The condition of the sale was, that Fairbank was to receive credit for a like amount in his bank account. He did not receive a formal credit, but his checks were paid to the amount of the exchange. When he afterward was notified that his account was overdrawn, he referred them to Carver, and the latter told Fairbank the money had been charged in his individual account. The sequel of this story is not disclosed by this record, but it is to be inferred that, on the dissolution of the partnership, Carver fell in debt to the firm, and they then sought to hold these defendants liable. As already stated, this case admits of but one decision. It is precisely the same thing as if a member of a mercantile firm in the city of Chicago, having been in the habit of buying merchandise from a house in New York, on the credit and for the benefit of the firm, which transactions they had always recognized, finally makes a purchase in the same way from the same house, but converts the goods to his individual use, instead of sending them to his firm. No person would deny the liability of the firm to the vendors of the goods. They had held out their partner as authorized to do precisely what he did do, and if loss is to follow it must fall on them. We are clearly of opinion, on the facts disclosed in this record, that Fairbank could have recovered from the firm of Carver & Co. the amount of exchange sold Carver if they had refused to pay his checks, and that, having paid them, they cannot now recover the money back either from Fairbank or from Dows & Co., admitting that Fairbank was the authorized agent of the latter. In the view we have taken of the case, the alleged errors in the instructions, and the

affidavits for a new trial, were alike immaterial, and the judgment must be affirmed.

*Judgment affirmed.*